IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOANNA WALLS<br><br>                    Plaintiff,<br><br>-vs-<br><br>SOCi, INC.<br><br>                    Defendant. | Civil Action No. |

Plaintiff, JOANNA WALLS, by and through her attorneys, Freundlich and Littman, LLC, hereby files this civil action complaint against Defendant, SOCi, INC., for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII"), the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"), the Equal Pay Act, 29 U.S.C. § 206(d) ("EPA"), the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. ("FMLA"), and the Pennsylvania Human Relations Act, as amended, 43 P.S. §§ 951 et seq. ("PHRA").

**PARTIES**

1. Plaintiff, JOANNA WALLS (hereinafter referred to as "Plaintiff" or "WALLS"), is an individual African American female who is a resident of the County of Chester in the Commonwealth of Pennsylvania.

2. At all times material, Plaintiff worked remotely from Pennsylvania while employed by Defendant.

3. Defendant, SOCi, INC. (hereinafter referred to as "Defendant" or "SOCI"), is a foreign business corporation authorized to conduct business within the Commonwealth of Pennsylvania.

4. At all times material, Defendant maintained its corporate headquarters at 350 Tenth Avenue, Suite 101, San Diego, California 92101.

5. At all times material, Defendant SOCI employed at least fifteen (15) employees and was an employer within the meaning of Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Family and Medical Leave Act, the Equal Pay Act, and the Pennsylvania Human Relations Act.

6. At all times relevant to this Civil Action, Defendant SOCI was Plaintiff's employer and controlled the terms, conditions, and privileges of Plaintiff's employment.

## JURISDICTION AND VENUE

7. Jurisdiction of this action is conferred upon this Court pursuant to federal question jurisdiction under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Equal Pay Act, and the Family and Medical Leave Act.

8. This Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

9. Venue is proper in the Eastern District of Pennsylvania because Plaintiff was employed by Defendant and worked remotely from the County of Chester in the Commonwealth of Pennsylvania, where the discrimination, harassment, retaliation, and hostile work environment occurred.

10. On or around July 10, 2024, Plaintiff, Joanna Walls, filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendant, as described herein.

11. Plaintiff's Charge of Discrimination was dual filed with the Pennsylvania Human Relations Commission ("PHRC") and the Philadelphia Commission on Human Relations ("PCHR").

12. Plaintiff's rights under the Pennsylvania Human Relations Act and the Philadelphia Fair Practices Ordinance will be ripe for suit one year after the date her Charge of Discrimination was dual filed with the PHRC and the PCHR.

13. Plaintiff includes her PHRA claims in this civil action complaint in the interest of judicial economy, as Plaintiff's rights under state law will be ripe in approximately thirty days.

14. On or around September 11, 2025, the EEOC issued and sent Plaintiff a Dismissal and Notice of Rights advising her that she must file a civil action within ninety (90) days of receipt.

15. This action is timely commenced within ninety (90) days of Plaintiff's receipt of the Dismissal and Notice of Rights.

## MATERIAL FACTS

16. On or around September 12, 2022, Plaintiff was hired by Defendant as a Talent Acquisition Manager. Plaintiff is an African American woman.

17. In or around January 2023, Defendant underwent a department-wide restructuring. As a result, Plaintiff's title changed to Lead Recruiter. Plaintiff supported multiple departments and facilitated hiring processes throughout the organization.

18. From the outset of her employment, Plaintiff was subjected to differential treatment, exclusion, and hostility that her Caucasian peers did not experience. Defendant's employees repeatedly undermined her role, dismissed her contributions, and created a work environment that was hostile and discriminatory on the basis of race and gender.

19. Beginning in or around May 2023, Plaintiff led a Zoom meeting regarding the recruitment process for the Customer Success Department. Present were Director of Customer Success Ella Klancic (Caucasian), Human Resources Business Partner Sarah Um (Asian), and Senior Director of Customer Success Jennifer Coen (Caucasian). During the meeting, Ms. Klancic and Ms. Coen abruptly directed Plaintiff to leave the call, excluding her from her own meeting and removing her from involvement in recruitment for that department.

20. Also in May 2023, Plaintiff wore a culturally based protective hairstyle consisting of twisted braids. During a subsequent Zoom call, Ms. Klancic and Ms. Coen openly laughed at Plaintiff's hairstyle. Their conduct conveyed ridicule of Plaintiff's natural, culturally significant hairstyle and contributed to an ongoing pattern of race-based hostility.

21. On or around July 13, 2023, Ms. Klancic wrongfully blamed Plaintiff for referral-related confusion and chastised her based on incorrect assumptions that were later proven false.

22. Later that same day, Plaintiff emailed Vice President of Talent Acquisition Craig Single (Caucasian) to report the incident involving Ms. Klancic and to raise concerns regarding discriminatory treatment. Plaintiff copied newly appointed Director of Talent Acquisition Amber Amole (Caucasian). Although Mr. Single initially acknowledged the complaint, Defendant failed to follow up, investigate, or address her concerns.

23. On or around August 24, 2023, Ms. Amole issued Plaintiff a negative and inaccurate performance review. The review included false allegations and improperly held Plaintiff responsible for mistreatment she experienced from Ms. Coen and Ms. Klancic. Plaintiff reviewed the evaluation line by line with Ms. Amole and explained why the accusations were unfounded.

24. Plaintiff also informed Ms. Amole that Defendant had outsourced portions of the recruiting function to external agencies, including agencies in the Philippines. Plaintiff advised

that she did not control the types or quantities of requisitions she received because of this outsourcing. Despite these limitations, Plaintiff continued to perform above expectations.

25. In late August 2023, Plaintiff emailed HR Business Partner Stephanie Cooper (Asian) to report ongoing mistreatment by the Customer Success Department. Ms. Cooper forwarded the complaint to Director of Human Resources Meredith Shelby (Caucasian), who informed Plaintiff that a third-party consultant, The O'Connor Group, would conduct the investigation.

26. On or around August 23, 2023, HR Business Partner Sarah Um acknowledged to Plaintiff that the level of combativeness directed toward her by Ms. Coen was obvious.

27. On or around August 30, 2023, Plaintiff followed up with Ms. Shelby regarding the status of the investigation and stated that she believed she was being mistreated because of her race. That same day, Ms. Amole emailed Plaintiff following up on their one-on-one meeting. In the email, Ms. Amole attached an updated job description for the Lead Talent Acquisition Partner role and highlighted new KPIs and metrics. Defendant later applied these metrics retroactively to the beginning of the third quarter, from July 1 to September 30, and used them to determine Plaintiff's bonus eligibility. As a result, Plaintiff received only sixty percent of her quarterly bonus.

28. Shortly after Plaintiff raised her complaints, she participated in a call with Ms. Amole and Mr. Single regarding her inaccurate performance review. Although Mr. Single stated that he would correct the evaluation, the revised version remained inaccurate. He further stated that he intended to place Plaintiff on a Performance Improvement Plan but abruptly reversed course. Upon information and belief, both leaders were aware that Plaintiff had recently followed up with HR regarding her discrimination complaint.

29. On September 14, 2023, The O'Connor Group notified Plaintiff by email and Zoom that its investigation had concluded. The investigator denied that race discrimination occurred but acknowledged that Ms. Klancic and Ms. Coen required additional training.

30. In early September 2023, Plaintiff discovered a significant pay disparity between herself and her Caucasian male counterpart. Lead Recruiter Todd Blackmon (Caucasian and male) earned $145,000 annually and received approximately $38,000 in stock options, while Plaintiff earned $122,500 annually and received only $10,000 in stock options despite performing the same role.

31. Plaintiff also learned of additional racial pay disparities within the Talent Acquisition team. Senior Talent Acquisition Partner Kelly Thomas (African American) earned $85,000 annually and later received a small raise to $87,500. In contrast, Talent Acquisition Partner Candice Holman (Caucasian), who held a lower-level position than Ms. Thomas, was also paid $85,000 annually.

32. Plaintiff further learned that Senior Talent Acquisition Partner Jennifer Sullivan (Caucasian) earned $95,000 annually and later received a raise to $115,000, plus a $5,000 performance increase and stock options. These disparities reflected unequal pay for African American employees in comparable positions.

33. Defendant also compensated African American Sourcers less than their Caucasian counterparts. For example, Talent Acquisition Sourcer D'Undre Mitchell (African American) earned between $53,000 and $54,000 annually, while Caucasian Sourcers including Noah Willard, Sarah Coomer, Jasmine Millman, Daniel Jaynes, and Josh Hawkins earned between $62,000 and $67,000 annually.

34. Similarly, Associate Talent Acquisition Partner Niesia Griffin (African American) received a starting salary of $62,000, which was equal to or less than the salaries paid to Caucasian employees in lower-level Talent Acquisition roles.

35. On or around October 12, 2023, Plaintiff met with Ms. Amole via Zoom. During the meeting, Ms. Amole offered Plaintiff severance in exchange for her agreement to leave the company and abandon her discrimination complaints. Plaintiff declined.

36. After Plaintiff raised repeated concerns of discrimination, Defendant subjected her to heightened scrutiny, nitpicking of her work product, and harsher performance standards than those imposed on Caucasian employees. Plaintiff was given only four business weeks to complete a quarterly project, whereas Caucasian employees, including Plaintiff prior to engaging in protected activity, were given the full three months. Ms. Shelby was aware of this disparate treatment.

37. On or around November 3, 2023, Plaintiff again complained to Ms. Shelby regarding discriminatory pay disparities, hostile treatment, and retaliation. Plaintiff also informed Ms. Shelby that she had been diagnosed in August 2023 with Generalized Anxiety Disorder and Major Depressive Disorder caused by Defendant's hostile work environment.

38. Plaintiff applied for FMLA leave based on her medical conditions. Ms. Shelby initially approved leave through January 8, 2024, and later extended the leave through February 12, 2024.

39. Plaintiff is a qualified individual with disabilities under the Americans with Disabilities Act because she has, has a record of, and was regarded as having impairments that substantially limit major life activities.

40. During Plaintiff's FMLA leave, The O'Connor Group conducted its investigation. Plaintiff cooperated fully by participating in phone interviews and providing documentation.

Following the investigation, Ms. Shelby informed Plaintiff that Defendant denied her discrimination and pay disparity complaints.

41. Plaintiff returned from approved FMLA leave on or around February 12, 2024. On the same day, Ms. Amole and Ms. Shelby terminated Plaintiff's employment via Zoom. Defendant later reclassified Plaintiff's position to a contractor recruiter role and stated that she remained eligible for rehire, yet Defendant never offered her the contractor position.

42. The adverse actions taken against Plaintiff, including false evaluations, heightened scrutiny, retroactive application of performance metrics that negatively impacted her compensation, refusal to remedy unequal pay, denial of disability-related concerns, and her termination, were pretextual and retaliatory and occurred within a broader pattern of discriminatory and hostile conduct.

## COUNT I
## FOR DISCRIMINATION UNDER TITLE VII

43. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

44. Title VII, 42 U.S.C. § 2000e-2, makes it unlawful for an employer to discriminate against an employee with respect to compensation, terms, conditions, or privileges of employment because of the employee's race.

45. Plaintiff is an African American woman and is a member of a protected class under Title VII.

46. Defendant engaged in unlawful employment practices by discriminating against Plaintiff because of her race, including but not limited to: excluding her from departmental meetings, subjecting her to ridicule about her culturally based hairstyle, issuing false and pretextual

performance criticisms, ignoring her complaints, and compensating her less than similarly situated Caucasian employees performing equal or lesser work.

47. Plaintiff was subjected to adverse employment actions due to her race, including disparate pay, heightened scrutiny, denial of equal work conditions, and termination.

48. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff suffered loss of income, loss of benefits, career harm, emotional distress, humiliation, and other compensable injuries.

## COUNT II
## RETALIATION UNDER TITLE VII

49. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

50. Title VII, 42 U.S.C. § 2000e-3(a), prohibits employers from retaliating against employees who oppose or complain about discriminatory practices.

51. Plaintiff engaged in protected activity by submitting multiple complaints regarding race discrimination, disparate pay, harassment, and unfair treatment.

52. After Plaintiff complained, Defendant retaliated against her by issuing a negative and inaccurate performance review, threatening her with a Performance Improvement Plan, increasing scrutiny of her work, reducing her project completion timeline, and ultimately terminating her employment.

53. Defendant's retaliatory actions constitute unlawful retaliation under Title VII.

54. As a direct and proximate result of Defendant's retaliation, Plaintiff suffered economic harm, emotional pain, humiliation, and other damages.

## COUNT III
## DISCRIMINATION UNDER STATE LAW

55. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

56. The PHRA, 43 P.S. § 955(d), makes it unlawful for an employer to retaliate against an employee for opposing discrimination or participating in an investigation regarding discrimination.

57. Plaintiff engaged in protected activity when she complained internally about race discrimination, disparate pay, hostile treatment, and retaliation.

58. After Plaintiff lodged these complaints, Defendant engaged in retaliatory acts including increased scrutiny, reduced project timelines, refusal to correct false performance criticisms, denial of equal opportunities, and terminating her employment on the same day she returned from FMLA leave.

59. As a result of Defendant's unlawful retaliation, Plaintiff suffered emotional distress, economic loss, and other compensable damages.

## COUNT IV
## RETALIATION UNDER STATE LAW

60. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

61. The PHRA, 43 P.S. § 955(d), makes it unlawful for an employer to retaliate against an employee for opposing discrimination or participating in an investigation regarding discrimination.

62. Plaintiff engaged in protected activity when she complained internally about race discrimination, disparate pay, hostile treatment, and retaliation.

63. After Plaintiff lodged these complaints, Defendant engaged in retaliatory acts including increased scrutiny, reduced project timelines, refusal to correct false performance criticisms,

denial of equal opportunities, and terminating her employment on the same day she returned from FMLA leave.

64. As a result of Defendant's unlawful retaliation, Plaintiff suffered emotional distress, economic loss, and other compensable damages.

## COUNT V
## DISCRIMINATION AND RETALIATION UNDER THE ADA & FMLA

65. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

66. Plaintiff was diagnosed with Generalized Anxiety Disorder and Major Depressive Disorder caused by Defendant's hostile work environment, and these conditions constitute disabilities under the ADA.

67. Plaintiff requested and was approved for FMLA leave due to these medical conditions, thereby engaging in protected activity under the FMLA.

68. During Plaintiff's protected medical leave, Defendant repeatedly contacted her regarding an HR investigation, denied her disability-related complaints, and failed to correct or address her concerns.

69. On the same day Plaintiff returned from FMLA leave, Defendant abruptly terminated her employment under the pretext of financial reasons and subsequently reassigned her role to a contractor position without offering it to her.

70. Defendant's conduct constitutes discrimination and retaliation in violation of the ADA and the FMLA.

71. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered emotional distress, loss of pay, loss of benefits, and other compensable harm.

## JURY DEMAND

Plaintiff requests a jury trial on all issued to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, liquidated damages, statutory damaged, attorney's fees, costs, and disbursement of action; and for such other relief as the Court deems just and proper.

DATED: December 8, 2025

**FREUNDLICH & LITTMAN, LLC**

*/s/ Samuel C. Wilson*
Samuel C. Wilson, Esquire
1425 Walnut Street
Suite 200 (2nd Floor)
Philadelphia, PA 19102
215-545-8500
Sam@FandLLaw.com
*Counsel for Plaintiff*